UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:  Case No. 19-40211
 Jointly Administered
SKYMARK PROPERTIES II, LLC, et al.,[1]
 Chapter 11
         Debtors.
 Judge Thomas J. Tucker
_____/

# OPINION REGARDING THE MOTIONS TO DISMISS
# THESE JOINTLY-ADMINISTERED BANKRUPTCY CASES

## I. Introduction

These jointly-administered cases came before the Court for a hearing on February 6, 2019, on three motions, namely:

(1) the joint motion by state court receiver NAI Farbman (the "Receiver") and secured creditor Southfield Metro Center Holdings, LLC (the "Lender") entitled "Joint Motion by Receiver NAI Farbman and Secured Creditor Southfield Metro Center Holdings LLC (I) to Dismiss or Suspend the Bankruptcy Case, or in the Alternative, (ii) for Relief under Section 543(c) and (d) of the Bankruptcy Code" (Docket # 32 in Case No. 19-40248, the "Joint Dismissal Motion");

(2) the motion by the Lender entitled "Motion by Secured Creditor Southfield Metro Center Holdings LLC to Dismiss or Suspend the Bankruptcy Case" (Docket # 24 in Case No. 19-40211, the "Dismissal Motion"); and

(3) the motion by the Debtor Skymark Properties SPE, LLC entitled "Debtors' Motion for Entry of an Interim and Final Order Permitting the Use of Cash Collateral" (Docket # 60 in Case

---

[1] This case is being jointly administered with the case of Skymark Properties SPE LLC, Case No. 19-40248.

No. 19-40248, the "Cash Collateral Motion").

In the Joint Dismissal Motion, the Receiver and the Lender jointly seek an order dismissing the case of the Debtor Skymark Properties SPE, LLC ("SPE") (Case No. 19-40248) under 11 U.S.C. § 1112(b) for cause; or in the alternative, for an order dismissing or suspending the case under 11 U.S.C. § 305(a)(1), or in the alternative, for an order excusing the Receiver from complying with the turnover provisions of 11 U.S.C. § 543(d)(1) and for certain relief under 11 U.S.C. § 543(c).

In the Dismissal Motion, the Lender seeks an order dismissing the case of the Debtor Skymark Properties II, LLC ("Skymark II") (Case No. 19-40211), under § 1112(b) for cause; or in the alternative, for an order dismissing or suspending the case under § 305(a)(1).

The Debtors SPE and Skymark II objected to the Joint Dismissal Motion and the Dismissal Motion (collectively, the "Dismissal Motions"). Several other parties filed either a concurrence in or an objection to one or both of the Dismissal Motions. Concurrences were filed by the Debtor SPE's two major tenants, Stefanini, Inc. ("Stefanini") and Tenneco, Inc. ("Tenneco"); and by Morteza Katebian ("Katebian").[2] An objection was filed jointly by Laila Alizadeh, Troy Wilson, and Arash Missaghi.[3] The Court heard oral argument from all of the foregoing parties, through their attorneys, during the February 6, 2019 hearing.

Confirming action taken by the Court at the conclusion of the February 6, 2019 hearing, on February 7, 2019, the Court entered an order requiring certain parties to supplement the record

---

[2] Docket ## 38 and 51 in Case No. 19-40211; Docket # 63 in Case No. 19-40248.

[3] Docket # 54 in Case No. 19-40211.

in specific ways (the "February 7 Order").[4] The required supplements have been filed.[5] The Court has reviewed the motions, the briefs in support of the motions, the responses to the motions, the replies in support of the motions, all exhibits attached to the pleadings, the supplements filed in response to the February 7 Order, and the entire record, and concludes that no further hearing is required, and that the Cash Collateral Motion must be denied, and the Joint Dismissal Motion and the Dismissal Motion should be granted. This opinion concerns the Joint Dismissal Motion and the Dismissal Motion. Today the Court is filing a separate opinion regarding the Cash Collateral Motion.

## II. Jurisdiction

This Court has subject matter jurisdiction over this bankruptcy case and this contested matter under 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1), and Local Rule 83.50(a) (E.D. Mich.). This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), 157(b)(2)(E), and 157(b)(2)(O).

This proceeding also is "core" because it falls within the definition of a proceeding "arising under title 11" and of a proceeding "arising in" a case under title 11, within the meaning of 28 U.S.C. § 1334(b). Matters falling within either of these categories in § 1334(b) are deemed to be core proceedings. *See Allard v. Coenen* (*In re Trans–Industries, Inc.*), 419 B.R. 21, 27 (Bankr. E.D. Mich. 2009). This is a proceeding "arising under title 11" because it is "created or determined by a statutory provision of title 11," *see id.*, including Bankruptcy Code §§ 1112, 543, and 305. And this is a proceeding "arising in" a case under title 11, because it is a

---

[4] "Order Regarding Motions Heard on February 6, 2019" (Docket # 66 in Case No. 19-40211, the "February 7 Order").

[5] Docket ## 67, 69, 71, 75, 82 in Case No. 19-40211.

3

proceeding that "by [its] very nature, could arise only in bankruptcy cases." *See id.* at 27.

## III. Background

In its opinion filed today regarding the Cash Collateral Motion, the Court described at length the background and the events leading to the Debtors' bankruptcy filings. *See* Part III of the Court's opinion entitled "Opinion Regarding the Debtor's Cash Collateral Motion," filed today. Because that background also is relevant to the Dismissal Motions discussed in this opinion, the Court incorporates it into this opinion by reference.

## IV. Discussion of the Dismissal Motions

### A. Standards under the applicable provisions of the Bankruptcy Code

### 1. Section 1112(b) dismissal for "cause"

The Receiver, the Lender, Stefanini, Tenneco, and Katebian all seek an order dismissing the Debtors' bankruptcy cases "under Bankruptcy Code § 1112(b) based on lack of good faith and **for cause shown.**" Section 1112(b)(1) states:

> (b)(1) Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or **dismiss a case under this chapter**, whichever is in the best interests of creditors and the estate, **for cause** unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b)(1) (emphasis added). "Section 1112(b)(4) contains a nonexhaustive list of examples of "cause" justifying dismissal of a Chapter 11 case. These examples include 'substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation[.]' 11 U.S.C. § 1112(b)(4)(A)." *In re Creekside Sr. Apartments,*

4

> *L.P.*, 489 B.R. 51, 60 (B.A.P. 6th Cir. 2013).
>
>> In determining whether cause exists to dismiss a case under § 1112(b), a court must engage in a "case-specific" factual inquiry which "focus[es] on the circumstances of each debtor." *United Savs. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.* (*In re Timbers of Inwood Forest Assocs., Ltd.*), 808 F.2d 363, 371–72 (5th Cir.1987) (en banc), *aff'd*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988); *In re Great Am. Pyramid Joint Venture*, 144 B.R. 780, 791 (Bankr.W.D.Tenn.1992).

*Id.*

**2. Section 543**

This Court discussed Bankruptcy Code § 543 in *In re Packard Square LLC*, 575 B.R. 768 (Bankr. E.D. Mich. 2017), *aff'd.*, 586 B.R. 853 (E.D. Mich. 2018). The Court now reiterates what it said in *Packard Square*:

> Section 543 of the Bankruptcy Code states:
>
>> (a) A custodian with knowledge of the commencement of a case under this title concerning the debtor may not make any disbursement from, or take any action in the administration of, property of the debtor, proceeds, product, offspring, rents, or profits of such property, or property of the estate, in the possession, custody, or control of such custodian, except such action as is necessary to preserve such property.
>>
>> (b) A custodian shall--
>>
>>> (1) deliver to the trustee any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property, that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of

5

the case; and

(2) file an accounting of any property of the debtor, or proceeds, product, offspring, rents, or profits of such property, that, at any time, came into the possession, custody, or control of such custodian.

(c) The court, after notice and a hearing, shall--

(1) protect all entities to which a custodian has become obligated with respect to such property or proceeds, product, offspring, rents, or profits of such property;

(2) provide for the payment of reasonable compensation for services rendered and costs and expenses incurred by such custodian; and

(3) surcharge such custodian, other than an assignee for the benefit of the debtor's creditors that was appointed or took possession more than 120 days before the date of the filing of the petition, for any improper or excessive disbursement, other than a disbursement that has been made in accordance with applicable law or that has been approved, after notice and a hearing, by a court of competent jurisdiction before the commencement of the case under this title.

(d) After notice and hearing, the bankruptcy court–

(1) may excuse compliance with subsection (a), (b), or (c) of this section if the interests of creditors and, if the debtor is not insolvent, of

6

> equity security holders would be better served by permitting a custodian to continue in possession, custody, or control of such property, and
>
> (2) shall excuse compliance with subsections (a) and (b)(1) of this section if the custodian is an assignee for the benefit of the debtor's creditors that was appointed or took possession more than 120 days before the date of the filing of the petition, unless compliance with such subsections is necessary to prevent fraud or injustice.

11 U.S.C. § 543.

The obligation of a custodian to turn over property of the debtor to the "trustee," upon learning of the commencement of a bankruptcy case by the debtor, also requires a custodian to turn over such property to a debtor-in-possession in a Chapter 11 case, where a trustee has not been appointed. *See* 11 U.S.C. § 1107(a). And the parties agree that a state court receiver is a "custodian" within the meaning of 11 U.S.C. § 543. *See* 11 U.S.C. § 101(11)(A) ("The term 'custodian' means . . . receiver or trustee of any of the property of the debtor, appointed in a case or proceeding not under this title[.]"); *In re Franklin*, 476 B.R. 545, 551 (Bankr. N.D. Ill. 2012); *In re Falconridge, LLC,* No. 07-bk-19200, 2007 WL 3332769, at *6 (Bankr. N.D. Ill. Nov. 8, 2007). Therefore, the Receiver . . . is a custodian under, and subject to, § 543.

The bankruptcy court has discretion under § 543(d)(1) to excuse a state court receiver from its mandatory turnover obligation under § 543(b)(1). *See In re Picacho Hills Util. Co., Inc.*, No. 11-13-10742 TL, 2013 WL 1788298, at *7 (Bankr. D.N.M. Apr. 26, 2013); *In re Corporate & Leisure Event Prods., Inc.*, 351 B.R. 724, 732 (Bankr. D. Ariz. 2006). A party seeking such relief has the burden of establishing "by a preponderance of the evidence that the best interests of the creditors [and if the debtor is insolvent, the best interest of equity security holders of

7

the Debtor] are served by permitting a custodian to retain control of the estate." *In re Picacho Hills Util. Co., Inc.*, No. 11-13-10742 TL, 2013 WL 1788298, at *7 (Bankr. D.N.M. April 26, 2013) (citing *Franklin*, 476 B.R. at 551).

In determining whether this burden has been satisfied, courts consider several factors, depending on the facts of a particular case, including:

(1) The likelihood of a reorganization;

(2) The probability that funds required for reorganization will be available;

(3) Whether there are instances of mismanagement by the debtor;

(4) Whether turnover would be injurious to creditors;

(5) Whether the debtor will use the turned over property for the benefit of its creditors;

(6) Whether or not there are avoidance issues raised with respect to property retained by a receiver, because a receiver does not possess avoiding powers for the benefit of the estate; and

(7) The fact that the bankruptcy automatic stay has deactivated the state court receivership action.

Regardless of what factors are used to aid the court in its decision, the paramount and sole concern is the interests of all creditors[, and if the debtor is solvent, the interests of equity security holders].

*Falconridge*, 2007 WL 3332769, at *7 (citations omitted).

"Reorganization policy generally favors turnover of business assets to the debtor in a [C]hapter 11 case." *In re Orchards Vill. Invs., LLC.*, 405 B.R. 341, 352 (Bankr. D. Or. 2009) (citation omitted). But in cases where the custodian is a receiver who was appointed by a state court pre-petition, bankruptcy courts

8

have considered the length of the time that the receiver has acted
under a receivership order, and what, if anything, the receiver has
done, and the impact of these considerations on the other relevant
factors. Where there is evidence before the bankruptcy court,
establishing that the interests of creditors would be better served by
allowing the state court receiver to remain in possession and
control of property of the bankruptcy estate, bankruptcy courts
have denied turnover motions by the debtor and granted motions to
excuse turnover. *See, e.g.*, *Orchards Vill. Invs.*, 405 B.R. at 353
(excusing a state court receiver from turnover of assets to the
debtor under § 543(d)(1), after applying three relevant factors,
where receivership had been in place for approximately six months
before the debtor filed for relief under Chapter 11 and had
improved substantially the conditions which caused the court to
appoint the receiver).

575 B.R. at 777-79.

### 3. Section 305(a)(1)

This Court also discussed Bankruptcy Code § 305(a)(1) in *Packard Square*, and now reiterates that discussion:

> Section 305(a)(1) of the Bankruptcy Code is an abstention
> provision. It states, in relevant part:
>
> (a) The court, after notice and a hearing, may
> dismiss a case under this title, or may suspend all
> proceedings in a case under this title, at any time if–
>
> (1) the interests of creditors and the debtor would be better
> served by such dismissal or suspension[.]
>
> 11 U.S.C. § 305(a)(1). "The decision to dismiss under § 305 is
> discretionary, and must be made on a case-by-case basis." *In re
> O'Neil Vill. Pers. Care Corp.*, 88 B.R. 76, 79 (Bankr. W.D. Pa.
> 1988) (citations omitted); *see also In re Corporate & Leisure Event
> Prods., Inc.*, 351 B.R. 724, 732-33 (Bankr. D. Ariz. 2006)
> ("[A]lthough the existence of bankruptcy jurisdiction may be
> undeniable, bankruptcy courts nevertheless have discretion to
> abstain or suspend proceedings if 'the interests of creditors and the
> debtor would be better served.' Code § 305(a)(1).").

> The pendency of state law liquidation proceedings . . . is relevant to an abstention decision under section 305(a)(1). For instance . . . when the debtor has been in receivership for so long that the bankruptcy case would be duplicative and wasteful, courts have deferred to state courts and abstained under section 305(a)(1).

2 *Collier on Bankruptcy* ¶ 305.02[2][c], at 305-8 to 305-09 (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2017) (footnotes omitted); *see also In re Newport Offshore Ltd.*, 219 B.R. 341, 354-55 (Bankr. D.R.I. 1998) (citing 11 U.S.C. § 305 and Collier at ¶ 305.02[2][c] (15th ed. Rev.1997) ("[Section] 305 provides that a bankruptcy court may dismiss a bankruptcy case or suspend proceedings within it in appropriate circumstances, which may include the pendency of state court receivership proceedings that appropriately serve the interests of involved parties.")

In *In re Orchards Vill. Invs.,* 405 B.R. at 351, the bankruptcy court listed the following factors that bankruptcy courts should consider in deciding whether to dismiss or abstain a case under § 305(a):

> Such factors generally include: (1) economy and efficiency of administration; (2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in a state court; (3) whether federal proceedings are necessary to reach a just and equitable solution; (4) whether there is an alternative means of achieving the equitable distribution of assets; (5) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case; (6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and (7) the purpose for which bankruptcy jurisdiction has been sought.

*Id.* (citation omitted). "However, ultimately, dismissal is appropriate under § 305(a)(1) only in the situation where the court finds that *both* creditors and the debtor would be better served by a

dismissal." *Id.* (internal quotation marks and citations omitted).

As with § 543(d)(1), where the custodian is a receiver appointed by a state court, courts have considered the length of the time that the receiver has acted under a receivership order, what the receiver has done, and the impact of these considerations on the other relevant factors. *See, e.g.*, *In re Starlite Houseboats, Inc.*, 426 B.R. 375, 389 (Bankr. D. Kan. 2010) (dismissing the bankruptcy case under § 305(a)(1) where a "state court receivership had been pending for approximately eight months when [the bankruptcy] case was filed," the court finding that "the interests of creditors and the [d]ebtor would be served by dismissal of the case" because "continuation of the state court receivership proceeding, which [was] well underway, [was] preferable to starting anew in [the bankruptcy] court"); *In re Michael S. Starbuck, Inc.*, 14 B.R. 134, 135 (Bankr. S.D.N.Y. 1981) (dismissing involuntary Chapter 11 case under § 305(a)(1) where a receivership had been operating for approximately 14 months, noting that: "[i]n evaluating the best interests of the creditors and the debtor, efficiency and economy of administration are primary considerations;" [o]ver 1,400 hours and $4,500 have already been expended by the receiver and counsel in the administration of the estate;" "[a]llowing this matter to continue as a debtor proceeding under the Bankruptcy Code would result in a terrible waste of time and resources;" "[m]any services, already rendered in the administration of the receivership estate, would have to be repeated at additional expense to the estate;" and "[n]o advantage would accrue to the creditors if this matter were to proceed in the bankruptcy court").

575 B.R. at 779-80 (footnote omitted).

**B. Application of relevant factors to these cases**

Under the circumstances of these cases, the Court concludes that an evidentiary hearing on the Dismissal Motions is not necessary. And the Court finds and concludes that there is cause to dismiss these cases, and that these cases should be dismissed.

The Court has considered all of the arguments of the parties, and all of the §§ 1112(b), 543(d)(1) and 305(a)(1) standards and factors identified in this opinion above. But the most

11

important factor in these cases, which overwhelms all other factors, is that the Court has denied the Debtor SPE's Cash Collateral Motion, and has ruled that SPE's only source of income, namely the rent from the tenants of SPE, is not property of the bankruptcy estate and cannot be used by the Debtors without the consent of the owner of that property. The owner is the Lender. The Lender has consented to the Receiver using the rental income, according to a budget approved in the state court case. But the Lender does not consent to the Debtors using any of the rental income in these bankruptcy cases.

The Debtor Skymark II has no income; rather, it has only a vacant, uninhabitable building that generates no income.

Thus, the Debtors have no income or source of income whatsoever. Thus, the Debtors cannot pay any of the expenses necessary to maintain, operate, or improve their commercial real estate properties. Nor can the Debtors fund the administrative expenses necessary to continue in these Chapter 11 cases. In short, the Debtors cannot operate or continue in these Chapter 11 bankruptcy cases.

The Debtors' stated "go-forward plan" in these Chapter 11 cases relies heavily on the Debtors being able to use the monthly rental income from SPE's tenants, in order to meet (and, they say, exceed) their monthly operating and maintenance expenses. But today the Court has ruled that the Debtors cannot use *any* of the rental income.

In addition to the rental income, the Debtors assert that one of their "affiliates," Skymark Capital Corporation, "has available capital in the amount of $1.5 million to inject into Debtors'

Properties to cover any shortfalls."⁶  This assertion is much too vague and speculative.  The Canadian non-bankruptcy affiliate, Skymark Capital Corporation, itself has not been heard from.  And the Debtors have not specified any of the following: what is the nature and form of this alleged "injection" of money, and when, and on what terms, would it be provided?  Presumably, it would be the form of some sort of loan that would require this Court's approval under 11 U.S.C. § 364.  Yet the Debtors have not filed any motion for approval of any sort of debtor-in-possession financing under 11 U.S.C. § 364.  Nor have the Debtors presented any sort of loan commitment or even a loan term sheet from this affiliate.

There is another problem with the vague evidence submitted by the Debtors about this alleged funding available from the Debtors' affiliate.  It does not indicate that this funding source will be available if and after the Court rules, as it now has, that the Debtors cannot use *any* of the rental income from SPE's Properties.  To the contrary, the evidence indicates that this funding source would be available only to **supplement** the Debtors' use of the rental income.  The Debtors' evidence, in the form of a Declaration of the Debtors' purported managing agent Troy Wilson, stated that "[t]he injection monies" would "be used for purposes of funding expenses or other capital expenditures needed at the properties that exceed the amounts [the] Debtors have available from rents."⁷

Dismissal of these bankruptcy cases is clearly in the best interest of the creditors and the Debtors' estates, as well as in the best interests of the Debtors and the Debtors' equity holder.  If

---

⁶ Debtors' Combined Br. in Response to Joint Dismissal Mot. (Docket # 55-1 in Case No. 19-40211) at 23; Declaration of Troy Wilson (Docket # 55-4 in Case No. 19-40211) at ¶¶ 6-7.

⁷ Declaration of Troy Wilson (Docket # 55-4 in Case No. 19-40211) at ¶ 7.

the cases are dismissed, the Receiver will continue, under the supervision of the state court, to use the rental income from SPE's tenants to operate and maintain the Debtor SPE's commercial office properties. If these cases are not dismissed, and the Court allows the Receiver to be displaced by the Debtor SPE as debtor-in-possession, *no one* can use the SPE rental income.

And it would make no sense for the Court to dismiss SPE's bankruptcy case without also dismissing Skymark II's bankruptcy case. Otherwise, Skymark II would be left alone in Chapter 11 bankruptcy, with a vacant, uninhabitable office building, no tenants, and no income or source of income whatsoever. A dismissal of the Skymark II bankruptcy case most likely will lead quickly to the appointment of a state court receiver over the Skymark II property. Skymark II filed its bankruptcy case only one day before a hearing was to be held on a receivership motion filed by the Lender in the 2019 state court lawsuit. There is every reason to believe that promptly after dismissal of the Skymark II case, the state court will appoint a receiver for Skymark II. And the goals of Skymark II's "go-forward plan" can best and most quickly be achieved by such a state court receiver, as discussed below.

Another important factor that strongly favors dismissal is that SPE's large, major tenants, Stefanini and Tenneco, both strongly oppose the SPE management being restored to control and management of the properties. Indeed, Stefanini has so strongly opposed the Debtors' management that Stefanini took the step — extraordinary for a tenant — of filing the 2018 State Court Lawsuit and obtaining the appointment of the Receiver to begin with. And both Stefanini and Tenneco have concurred in the Dismissal Motions. As the major tenants, Stefanini and Tenneco provide the lifeblood of SPE's business, and keeping them satisfied as tenants obviously is in the best interest of everyone in these cases — the creditors, the estate, the Debtors, and the

Debtors' equity holder. That goal is best satisfied by dismissing these bankruptcy cases and leaving the Receiver in place to move forward, under the supervision of the state court.

The Debtors have stated that their "go-forward plan" in these Chapter 11 cases is, in order of the Debtors' preferences, (1) locating another lender to provide financing to pay off the Lender ("[p]aying off [the Lender's] lien and moving to a new lending facility"); (2) selling one or more of the Debtors' Properties "in order to satisfy [the Lender's] claim;" and (3) confirming a plan of reorganization, apparently involving neither a refinancing or a sale.[8]

Without the ability to use any rental income, however, there is no apparent way in which the Debtors' can confirm or perform a plan of reorganization that does not involve either a refinancing or a sale of their Properties. As to the refinancing option, there is no reason why the Debtors cannot pursue refinancing with a new lender outside of bankruptcy, while the state court receivership continues. And Debtors have offered no such reason. The same is true about the option of selling some or all of the Debtors' Properties, and presumably realizing the benefit of the equity that the Debtors believe they have in the Properties.

In both the pending state court receivership action against SPE, and the receivership that no doubt will quickly result for Skymark II's property upon dismissal of Skymark II's bankruptcy case, the Debtors can just as well seek to obtain the refinance-or-sell objectives they wish to pursue in these bankruptcy cases, under Michigan law, including the provisions of the "Uniform Commercial Real Estate Receivership Act ("the 2018 Receivership Act"), Mich. Comp. Laws §§ 554-1101-554.1040, effective May 7, 2018.

---

[8] *See* Debtors' Combined Br. in Response to Joint Dismissal Mot. (Docket # 55-1 in Case No. 19-40211) at 23-24.

This includes:

(a) seeking and obtaining a judicial determination of the correct amount of their debt to the Lender, and challenging the Lender's claimed debt amount; *see, e.g.*, Mich. Comp. Laws Ann. § 554.1030 (claims process in the receivership action, and requirement in §§ 554.1030(5) and 554.1030(7) that secured and unsecured claims must be allowed, and distributions must be made, according to and under "law of this state other than this act");

(b) seeking and obtaining a judicial determination of any challenge to the validity and/or extent of the Lender's claimed liens; *see, e.g.*, *id.*;

(c) seeking to obtain a loan from a new lender to refinance the debt owing to the Lender, so as to replace the Lender with a new lender;

(d) seeking to protect the Debtors' claimed equity in their properties, through a fair market value sale of those properties, either through a Section 363-type sale under the 2018 Receivership Act, *see, e.g.*, Mich. Comp. Laws Ann. § 554.1026, or through a redemption of the properties under Michigan law after any foreclosure sale by the Lender. The Receiver indicated during the hearing that he expects soon to move forward with a § 363-type sale of the SPE Properties, or in the alternative, to see the Lender foreclose on that property by advertisement under Michigan law. And the parties agreed at the hearing that if the Lender sells any of the Debtors' Properties in a foreclosure by advertisement under Michigan law, the Debtors will have six months after the sale to redeem the Properties.

To the extent the Debtors claim that the Receiver is in any way not acting properly or quickly enough with respect to the Debtors' Properties, the Debtors can seek and obtain relief for that from the state court(s), in the receivership case(s). *See, e.g.*, Mich. Comp. Laws Ann.

16

§ 554.1015(2).

During the hearing, the Court asked Debtors' counsel this question: As to seeking avoidance of fraudulent transfers and preferential transfers, what can the Debtors achieve in their bankruptcy cases, under the Bankruptcy Code, that cannot be achieved in the state court receivership case(s), under the Michigan fraudulent transfer statutes, Mich. Comp. Laws Ann. § 566.31, et seq.? In essence, the only answer given was that under the Bankruptcy Code, by using 11 U.S.C. § 547, the Debtors can possibly obtain more relief in avoiding and recovering pre-petition preferential transfers than creditors could obtain outside of bankruptcy, under Michigan law. But the Debtors have not identified *any* pre-petition transfers by them that could be avoided as preferences under Bankruptcy Code § 547 and recovered in bankruptcy. And of any such avoidable transfers, the Debtors have not identified any that could not also be avoided and recovered under the insider-preference provision of Michigan's fraudulent transfer statute, Mich. Comp. Laws Ann. § 566.35(2) (making voidable certain transfers "to an insider for an antecedent debt [while] the debtor was insolvent").

Under the circumstances, the Court finds that there is cause under 11 U.S.C. § 1112(b)(1) to dismiss these bankruptcy cases, and that such dismissal is "in the best interests of the creditors and the estate[s]" within the meaning of § 1112(b)(1). The Court further finds that "the interests of creditors and the debtor[s] would be better served by . . . dismissal" of these cases, within the meaning of 11 U.S.C. § 305(a)(1). And the Court finds that "the interests of creditors and . . . of equity security holders would be better served by permitting a custodian to continue in possession, custody, or control of" property of the estates in theses cases, within the meaning of 11 U.S.C. § 543(d)(1). These findings lead the Court to conclude that it should dismiss these

bankruptcy cases.

So the Court will dismiss these bankruptcy cases. And in order to prevent any attempted evasion by anyone of the Court's decisions today, the Court will bar the filing of any new bankruptcy case, by or against the Debtors, for a period of two years. This should give ample time for the state court receiverships to substantially conclude. Imposing this bar to a new bankruptcy filing is within the Court's discretion and authority, under 11 U.S.C. § 105(a), and also under 11 U.S.C. § 349(a). *See In re Packard Square LLC*, 575 B.R. 768, 783 (Bankr. E.D. Mich. 2017); *In re Packard Square LLC*, 577 B.R. 533, 537-38 (Bankr. E.D. Mich. 2017), *aff'd.*, 586 B.R. 853 (E.D. Mich. 2018).

## V. Conclusion

For the reasons stated in this opinion, the Court will grant each of the Dismissal Motions, and will dismiss each of these jointly-administered bankruptcy cases, with a two year bar to refiling.

**Signed on February 21, 2019**

/s/ Thomas J. Tucker

**Thomas J. Tucker**
**United States Bankruptcy Judge**